# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4010
_____

|  |  |  |
|---|---|---|
| Mhireteab Wondmneh, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| John Ashcroft, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: December 18, 2003
Filed: March 25, 2004

_____

Before RILEY, LAY, and HEANEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Mhireteab Wondmneh (Wondmneh), a native of Ethiopia, petitions for review of an order of the Board of Immigration Appeals (BIA) summarily affirming an Immigration Judge's (IJ) denial of Wondmneh's application for asylum and withholding of removal. Wondmneh argues (1) the BIA erred when it failed to find a well-founded fear of future prosecution, and (2) the BIA failed to consider a valid claim for withholding of removal. After careful review of the record, we deny the petition.

## I.    BACKGROUND

Wondmneh, a member of the Amhara ethnic group in Ethiopia, entered the United States on September 6, 1992, as a nonimmigrant visitor authorized to remain in the United States for a period not to exceed October 15, 1992. The Immigration and Naturalization Service (INS) commenced removal proceedings against Wondmneh and charged him with being removable under section 237(a)(1)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(B) (2000). Wondmneh admitted the charge's factual allegations, and conceded he was removable. Wondmneh filed an application for asylum, and for relief under Article 3 of the Convention Against Torture and withholding of removal, which the IJ denied. The BIA affirmed the IJ without opinion.

## II.    DISCUSSION

Because the BIA affirmed the IJ without opinion, the IJ's decision is a final agency action for purposes of judicial review. Melecio-Saquil v. Ashcroft, 337 F.3d 983, 986 (8th Cir. 2003) (citing 8 C.F.R. § 3.1(a)(7)(iii)). "When a timely application for asylum has been denied, we will affirm the BIA's decision if it is supported by substantial evidence on the agency record considered as a whole." Raffington v. INS, 340 F.3d 720, 723 (8th Cir. 2003). "To overturn a finding that [he] is not eligible for asylum, [Wondmneh] must meet the heavy burden of demonstrating that the evidence was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution." Id.

Subject to certain exceptions, the Attorney General may grant asylum to an alien who proves he is a "refugee." Melecio-Saquil, 337 F.3d at 986 (citing 8 U.S.C. § 1158(b)(1)). A "refugee" is defined as "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "A well-founded fear of persecution is both

subjectively genuine and objectively reasonable." <u>Loulou v. Ashcroft</u>, 354 F.3d 706, 709 (8th Cir. 2003). "To show fear of persecution is objectively reasonable, an alien must present 'credible, direct, and specific evidence of facts that show a reasonable person in the alien's position would fear persecution if returned to the alien's native country.'" <u>Id.</u> (quoting <u>Ghasemimehr v. INS</u>, 7 F.3d 1389, 1390 (8th Cir. 1993)).

In denying Wondmneh's application for asylum, the IJ ruled Wondmneh failed to show he had a well-founded fear of persecution. The IJ found Wondmneh was a credible witness and believed Wondmneh's testimony. However, the IJ noted Wondmneh had not been persecuted in the past by any Ethiopian government. The IJ ruled Wondmneh had not shown a reasonable fear of future persecution based on one of the grounds enumerated in the INA. <u>See</u> 8 U.S.C. § 1101(a)(42)(A). The IJ observed that the country information about Ethiopia reflects changed conditions in Ethiopia following the fall of the Marxist Mengistu government. The IJ noted the State Department country information report states the AAPO, an Amharic organization, engages in opposition against the government. However, the State Department reported no evidence that the current government would harm people involved with the AAPO, as long as they renounce violence as a means to their ends. The IJ also found there are Amharas involved as members of the government, including the Deputy Prime Minister, the Minister of Defense, the Minister of Justice, the Minister of Trade and Industry, the Minister of Education, and the Speaker of the Parliament.

Wondmneh graduated from the University in Ethiopia in 1988 and began working for the customs department, a "very prestigious position," until August 1992. Wondmneh kept his position with the customs department after the fall of the Mengistu regime until he left for the United States. Wondmneh obtained a passport and left Ethiopia using normal procedures. Wondmneh did not belong to the AAPO or any political party while in Ethiopia, and has not belonged to a political party while in the United States. Though Wondmneh resisted recruitment into a Mengistu militia,

he was not arrested for the resistance, saying he escaped two times. Wondmneh was never arrested or physically harmed by any Ethiopian government, either under the Mengistu regime, any interim government, or the current government. Wondmneh's parents were not threatened or harmed after Wondmneh failed to return to work. Moreover, Wondmneh's parents remained in Ethiopia unharmed and have continuously lived in the family home in Addis Ababa since Wondmneh left. Wondmneh's father was arrested two times in 1974, serving a year in prison the second time. Upon his release from prison, he was given his job back. Wondmneh's father has not had further problems with the government or anyone else since the mid-1970s and continues to receive a government pension, which was first paid under the Mengistu regime and was continued after the Mengistu regime's fall from power. Wondmneh's brother allegedly fled to Kenya, because he opposed the government's policies. Wondmneh's uncle experienced some ethnic problems, and certain people tried to pressure the uncle to leave Ethiopia. We conclude substantial evidence supports the IJ's finding that Wondmneh did not show he personally suffered past persecution or had a well-founded fear of future persecution as enumerated in the INA.

Wondmneh also argues the IJ erred in denying his request for withholding of removal. "An asylum seeker's request for asylum is contemporaneously viewed as an application for withholding removal." Nyama v. Ashcroft, 357 F.3d 812, 815 n.1 (8th Cir. 2004). The standard for withholding removal, a clear probability of persecution, is more burdensome than a request for asylum. Id. As noted above, substantial evidence supports the BIA's denial of Wondmneh's asylum request. Thus, Wondmneh has not met the higher burden required for withholding of removal. See Regalado-Garcia v. INS, 305 F.3d 784, 788 (8th Cir. 2002).

## III. CONCLUSION

For the reasons stated, we deny Wondmneh's petition for review.

_____