# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-3801

_____

| | | |
|---|---|---|
| Sirene S. Zakirov, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order |
| | * | of the Board of Immigration Appeals. |
| John Ashcroft, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: February 12, 2004
Filed: September 17, 2004

_____

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and RILEY,
Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Sirene S. Zakirov petitions for review of an order of the Board of Immigration Appeals affirming without opinion an immigration judge's denial of his application for asylum and withholding of removal. Zakirov claimed past persecution in his native Russia and a well-founded fear that he would suffer from future persecution on account of his Tatar nationality if he were to return to what is now the Russian Federation. An Immigration Judge and the Board of Immigration Appeals denied his application on the ground that the record did not establish that Zakirov had been persecuted in the past based on his nationality, and that Zakirov did not demonstrate

an objectively reasonable fear of persecution if he returned to Tatarstan. Because that finding is supported by substantial evidence, we deny Zakirov's petition for review of the Board's decision.

Zakirov is a native and citizen of the Russian Federation. He was born in Kazakhstan, which was then a part of the U.S.S.R. and is now an independent republic. He later moved with his family to the Republic of Tatarstan, which is located southeast of Moscow and is now part of the Russian Federation.[1] Zakirov's parents still reside in Tatarstan. He began attending the University of Samara (located outside of Tatarstan) in 1984, but his education was interrupted in 1986 when he was drafted into the Soviet Army. Following his honorable discharge from the army in 1988, he returned to the university and graduated in 1991. While Zakirov attended the university, his tuition, dormitory, and meal expenses were subsidized by the government.

Zakirov asserts that he was subjected to several instances of persecution on the basis of his Tatar nationality while he was living in the U.S.S.R. The first incident occurred in 1984 when he was returning home from Moscow and stopped at a bus station in the city of Bugulma in the Tatar Republic. Several young men approached him, took his passport from him and, upon confirming that he was a Tatar, began insulting him. They ordered him to follow them to the bathroom. Zakirov ran from the group and was able to board his bus amidst a crowd of people. As the bus was pulling out, the same young men yelled at him that he would be dead if he ever returned. Zakirov was not physically hurt during this incident, but he was horrified by it and never returned to Bugulma.

---

[1] Zakirov's internal passport, issued in 1983 by the ministry of internal affairs of the U.S.S.R., identifies his nationality as Tatar. His Tatar nationality did not change with the breakup of the U.S.S.R. and the subsequent inclusion of the Republic of Tatarstan in the Russian Federation.

The next incident occurred on New Year's Eve in 1988 in the town in Tatarstan where Zakirov and his family lived. He was walking with his cousin when they were attacked by two Russian men who beat them and insulted them, calling them Tatar snouts. Zakirov observed that the men seemed to be "furious that we were talking Tatar." Zakirov's cousin had a black eye following the beating. Zakirov did not report either of these two incidents to the police.

In 1989 and 1990, Zakirov had two more violent encounters, both in a dormitory at the University of Samara. In the first, several students began beating him and insulting him based on his nationality, and one of his front teeth was cracked. His attackers warned him that things would get worse if he told anyone about the incident, and he did not. In November 1990, while going to investigate the loss of power in his dormitory room, Zakirov was attacked in the dark and beaten. He returned to his room and the attackers followed him. Although he could not see them, he recognized the voice of Sergei Lazarev, a fellow student whom he knew had taken part in the attack the previous year. He contacted the police the following day, and they did nothing more than refer him to the commandant of the dormitory. He reported the incident to her, but she took no action. In his conversations with the police and with the dormitory commandant, Zakirov did not identify Sergei or any of the others who accosted him. Zakirov testified that he sustained a bloody nose in that incident. Until the time he left the university, Zakirov was threatened and insulted from time to time by Sergei or his friends.

Zakirov was never beaten by government officials. He reported only one of these incidents to any sort of official, but he did not identify the people who attacked him. He felt emotional trauma because of the incidents, but he did not seek psychological help.

Zakirov came to the United States in 1991 as a nonimmigrant visitor in an international exchange program for students. His authorization to remain in the

United States expired on April 1, 1993, but he did not leave the country. Since residing in the United States, Zakirov has spoken with his parents monthly and they write letters to him. Both of his parents are retired from government jobs, and Zakirov believes that his sister and brother-in-law are employed by the government. Zakirov testified that he was never harmed by the government when he was living in Russia, and that to his knowledge no member of his family has been harmed.

The Immigration and Naturalization Service brought removal proceedings against Zakirov, and he admitted all the factual allegations contained in the Notice to Appear. Accordingly, the hearing focused only on his application for asylum, which the Immigration Judge considered to be a concurrent application for withholding of removal. Zakirov also sought relief under Article 3 of the Convention Against Torture and, alternatively, voluntary departure in lieu of an order of removal.

Zakirov testified that he fears returning to the Russian Federation because of the hatred, beatings, and insults that he experienced and the resulting emotional trauma. He stated that his fear of future prosecution is based solely on his being Tatar. Zakirov testified that Tatars can be identified by their appearance, as their facial features are unique in a way that is easily recognized by those who live in the region. Other than his own testimony, he offered no additional witnesses or evidence.

After the hearing, the Immigration Judge denied Zakirov's application for asylum. The Judge found that although Zakirov had suffered from discrimination in Russia due to his being Tatar, he had not been persecuted based on his nationality. This finding was based on Zakirov's testimony, which the Judge found credible. The Immigration Judge noted that most of the incidents Zakirov described occurred outside of Tatarstan, and that his parents and sister live in and work for the Republic of Tatarstan without being harmed. With respect to the incidents involving Sergei Lazarev, the Immigration Judge concluded that they were personal in nature. Zakirov did not seek redress for any of these situations, and the Immigration Judge found that

Zakirov failed to avail himself of remedies to call the government's attention to the discrimination he suffered. Zakirov has never been physically harmed by the government of Russia or of the U.S.S.R., and no member of his family has been harmed by private or public citizens. In fact, Zakirov obtained government benefits in the form of a summer job, a university scholarship, and subsidized student housing. The Immigration Judge also noted that Zakirov's parents receive ongoing pension benefits from the government, and Zakirov had no reason to believe that the government would harm him if he were to return to Tatarstan.

The Immigration Judge next considered the Department of State's Profile of Asylum Claims and Country Conditions and its Country Report for Russia. According to the State Department, the Tatar people came to power politically in the mid-1990s and began emphasizing the Tatar language, education, and political life. Most Tatars have come to believe that they are treated equally with ethnic Russians. In fact, Russians are now in the minority in terms of leadership, as Tatars occupy 70 to 80 percent of leading positions in government and administration.

Based on these findings, the Immigration Judge reached two conclusions. First, he concluded that nearly all of the violent incidents happened when Zakirov was in Russia, not Tatarstan, and his family's experiences show it is possible to live in Tatarstan without suffering persecution based on one's Tatar nationality. Second, the Immigration Judge concluded that conditions had changed since Zakirov left Russia. In sum, the Immigration Judge found that there was not an objective basis for Zakirov to fear future persecution on the basis of nationality.

Zakirov appealed the Immigration Judge's decision, and the Board of Immigration Appeals affirmed without opinion. In his appeal to this court, Zakirov argues that the Immigration Judge erred in failing to find that he suffers from a reasonable fear of future persecution and in failing to find that he was persecuted

because of his Tatar nationality. These alleged errors precluded a finding that Zakirov is eligible for asylum.[2]

The scope and standard of our review are in part statutorily prescribed. We are to decide the petition only on the administrative record, and the Immigration Judge's findings of fact are conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(A), (B) (2000). Because the Board of Immigration Appeals affirmed without opinion, the Immigration Judge's decision is a final agency action for purposes of review. Wondmneh v. Ashcroft, 361 F.3d 1096, 1097 (8th Cir. 2004). Where, as here, the timely application for asylum was denied, we are to affirm the decision "if it is supported by substantial evidence on the agency record considered as a whole." Id. (quoting Raffington v. INS, 340 F.3d 720, 723 (8th Cir. 2003)). We cannot overturn the decision to deny asylum unless Zakirov introduced evidence that would compel any reasonable fact-finder to conclude that the requisite fear of persecution existed. INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1 (1992).

---

[2]Zakirov devotes the bulk of his brief to arguing that his constitutional due process rights were violated by the Bureau of Immigration Appeals' use of its streamlined review procedure in reviewing his case. Instead of the traditional three-member panel, the Bureau has approved a procedure whereby a single member may affirm an Immigration Judge's decision without opinion if that member decides the result was correct; any errors were harmless or not material; and either the issue on appeal is squarely controlled by existing precedent and involves no novel facts, or the factual and legal questions at issue are so insubstantial that a written opinion is not warranted. 8 C.F.R. § 1003.1(e)(4)(i) (2002).

After Zakirov filed his brief but before this case was argued, this court held that the Bureau's streamlined review procedure does not violate an alien's due process rights. Loulou v. Ashcroft, 354 F.3d 706, 708-09 (8th Cir. 2003), as amended by No. 02-3004, slip op. (8th Cir. April 28, 2004); see also Dominguez v. Ashcroft, 336 F.3d 678, 680 (8th Cir. 2003) (streamlined procedure is not an abuse of discretion). At oral argument, Zakirov's counsel withdrew this claim.

The Attorney General has discretionary authority to grant asylum to those immigrants who qualify as refugees. 8 U.S.C. § 1158(b)(1) (2000). A refugee is an alien who is not willing to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (2000). The "well-founded fear of persecution" includes both subjective and objective elements. The first may be satisfied with credible evidence of fear, but the second requires a showing of "credible, direct, and specific evidence that a reasonable person in the applicant's position would fear persecution if returned to [his] country of origin." Shoaira v. Ashcroft, 377 F.3d 837, 844 (8th Cir. 2004).

If an applicant demonstrates past persecution, the applicant is entitled to a presumption of a well-founded fear of future persecution. Perinpanathan v. INS, 310 F.3d 594, 598 (8th Cir. 2002). The burden then shifts to the government to show by a preponderance of the evidence that country conditions have changed to such an extent that the applicant has no well-founded fear of persecution upon return. Francois v. INS, 283 F.3d 926, 930-31 (8th Cir. 2002). Although the statute does not define persecution, we have defined it as "the infliction or threat of death, torture, or injury to one's person or freedom" for a proscribed reason. Shoaira, 377 F.3d at 844 (quoting Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002)). Persecution is an extreme concept and does not include low-level intimidation and harassment. Shoaira, 377 F.3d at 844 (quoting Eusebio v. Ashcroft, 361 F.3d 1088, 1090 (8th Cir. 2004)).

The Immigration Judge found Zakirov's testimony credible and noted that it may have supported a finding that Zakirov had a subjective fear of returning to Russia. The Immigration Judge stated that Zakirov's experiences did not rise to the level of persecution, but we need not decide this question. Even if Zakirov had been subject to past persecution, the government proved that he could live safely in Tatarstan and that country conditions have changed. Zakirov produced no evidence

that the government of Russia would harm him or his family on the basis of his Tatar nationality if he were to return. The Immigration Judge noted that the incidents Zakirov described had occurred in the former U.S.S.R., and that if he returned to the Russian Federation there would be a change in country conditions. The Judge reviewed the State Department reports on file and found that the country information contained in them led him to conclude that Zakirov could live in the Republic of Tatarstan without being persecuted. The Immigration Judge is permitted to rely on these reports as they relate to the likelihood of future persecution. Gebrehiwot v. Ashcroft, 374 F.3d 723, 726 (8th Cir. 2004); 8 C.F.R. § 208.13(b) (2002). See also Melecio-Saquil v. Ashcroft, 337 F.3d 983, 987 (8th Cir. 2003) (alien's reliance on events that happened more than a decade ago, without showing why those events provide basis for present fear of future persecution, fails to discredit Immigration Judge's finding that changed country conditions translated into lack of objectively reasonable fear); Francois, 283 F.3d at 931 (evidence submitted by alien to support claims of future persecution related to events that occurred in prior political regime, and Bureau's factual determination that alien had no objective basis to fear future persecution based on change in regime is supported by substantial evidence). Therefore, Zakirov did not establish past persecution should keep him from returning, and the Judge concluded that Zakirov did not have a well-founded fear of future persecution.

The Immigration Judge also found that Zakirov's parents, sister, and brother-in-law continue to live in Tatarstan without being harmed, and that their status diminished his claim of future persecution. This, too, contributes to the substantial evidence supporting the denial of asylum. See Manivong v. Dist. Dir., U.S. Dep't of Justice INS, 164 F.3d 432, 433-34 (8th Cir. 1999).

Based on the agency record, we conclude that the Immigration Judge's decision is supported by substantial evidence. Because Zakirov failed to establish a well-founded fear of persecution, he also failed under the more stringent standard of proof

required for withholding of removal.  <u>Francois</u>, 283 F.3d at 932-33.  Zakirov is not entitled to relief under the Convention Against Torture because he failed to demonstrate that it is more likely than not that he would be tortured if he returned to Tatarstan.  <u>Perinpanathan</u>, 310 F.3d at 599.

We deny the petition for review.

_____